UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

      Plaintiff,

v.

(1) CODY WAYNE TIMMERMAN,
    also known as "Ben Davis,"
(2) IRMA BEATRICE TIMMERMAN,
    also known as "Grace,"
(3) SIARRA IRIS DAWN GALLEGOS,
    also known as "Holly" and "Sarah,"
(4) JUSTIN DONALD SUHAJDA,
(5) TODD ALLEN HUGHES,
    also known as "Eric" and "Justin,"
(6) [Redacted],
(7) [Redacted],
(8) SAMAN MOGHBEL, and
(9) [Redacted],
[Redacted]

      Defendants.

INDICTMENT

18 U.S.C. § 1349
18 U.S.C. § 1343
18 U.S.C. § 2326

THE UNITED STATES GRAND JURY CHARGES:

## OVERVIEW

1. Over the past decade, the defendants devised and carried out a scheme through which Canadian telemarketing companies defrauded more than 20,000 victims—many of whom were elderly and vulnerable—across the United States. The scheme targeted people who had previously fallen victim to a fraudulent magazine sales scam and been tricked into signing up for multiple expensive magazine subscriptions they did not want and could not afford. The defendants took advantage of the victims' desperation to make the magazine subscriptions stop. They called the

victims pretending to be from the "magazine cancellation department." The defendants offered to pay off the victims' "outstanding balance" and cancel their existing magazine subscriptions in exchange for a large, lump-sum payment. None of this was true. In reality, the victims did not owe the defendants or their companies any money. And the defendants had no power or ability to cancel the victims' existing magazine subscriptions or any outstanding balance owed to any other magazine companies. The offer was fraudulent and the defendants stole the money paid by their victims. In all, the defendants defrauded their victims out of approximately $30 million.

## COUNT 1
(Conspiracy to Commit Wire Fraud)

2. At times relevant to this Indictment:

a. Preferred Customer Corporation ("PCC"), formerly known as Family Readers Center, was a Canadian company purportedly in the business of selling magazine subscription packages to customers throughout the United States. PCC is located in Toronto, Ontario.

b. Defendant **Redacted** is a Canadian citizen and the owner of PCC.

c. Defendant **Redacted** is a Canadian citizen and the manager of PCC.

d. Defendants CODY TIMMERMAN and IRMA TIMMERMAN owned and operated Middle Man Marketing LLC and Nationwide Readers Club, Arizona-based companies purportedly in the business of selling magazine

2

subscription packages to customers throughout the United States. CODY and IRMA TIMMERMAN operated a telemarketing call center from their home in Maricopa, Arizona.

e. Defendant SIARRA GALLEGOS worked as a telemarketer for Middle Man Marketing LLC from her home in Hemet, California.

f. Defendant JUSTIN SUHAJDA owned and operated The Magazine Deal Inc., a California-based company purportedly in the business of selling magazine subscription packages to customers throughout the United States. SUHAJDA operated a telemarketing call center from his home in San Jacinto, California.

g. Defendant TODD HUGHES worked as a telemarketer for The Magazine Deal Inc. from his home in Holstein, Iowa.

h. Defendants CODY and IRMA TIMMERMAN, GALLEGOS, SUHAJDA, and HUGHES made fraudulent telemarketing calls on behalf of PCC.

i. Services des Lectuers Inc., also known as Readers Services Inc. ("Readers Services"), was a Canadian company purportedly in the business of selling magazine subscription packages to customers throughout the United States. Readers Services is located in Montreal, Quebec.

j. Services NPR Inc., also known as NP Readers Service Inc. ("NP Readers"), was a Canadian company purportedly in the business of selling magazine subscription packages to customers throughout the United States. NP Readers is located in Montreal, Quebec.

3

k. Defendant SAMAN MOGHBEL and defendant [Redacted] are Canadian citizens who owned and operated Readers Services and NP Readers.

l. Defendants MOGHBEL and [Redacted] outsourced some telemarketing calls on behalf of Readers Services and NP Reader to a call center in the Philippines (the "Philippines Call Center").

3. From at least in or about 2011 through in or about 2020, in the State and District of Minnesota, and elsewhere, the defendants,

>CODY WAYNE TIMMERMAN,
>also known as "Ben Davis,"
>IRMA BEATRICE TIMMERMAN,
>also known as "Grace,"
>SIARRA IRIS DAWN GALLEGOS,
>also known as "Holly" and "Sarah,"
>JUSTIN DONALD SUHAJDA,
>TODD ALLEN HUGHES,
>also known as "Eric" and "Justin,"
>[Redacted],
>[Redacted],
>SAMAN MOGHBEL, and
>[Redacted],
>[Redacted]

did knowingly conspire with each other, and others known and unknown to the grand jury, to devise a scheme and artifice to defraud and to obtain money by materially false and fraudulent pretenses, representations, and promises, in connection with the conduct of telemarketing that victimized ten or more persons over the age of 55, and for the purpose of executing such scheme and artifice, caused the sending, delivering, and receipt of various matters and things by United States Postal Service and private and commercial interstate carrier, in violation of Title 18, United States Code, Sections 1341, 1349, and 2326.

## Overview and Purpose of the Conspiracy

4. The purpose of the conspiracy was to defraud consumers who had previously been tricked by other fraudulent magazine companies into signing up for multiple expensive magazine subscription packages they did not want. The companies called victim-consumers around the country and fraudulently offered to cancel their existing subscriptions and pay off any outstanding balance for one or more large, lump-sum payments. In reality, the victim-consumers did not owe the defendants or their companies any money and the defendants had no power or authority to stop or cancel the victim-consumers' ongoing subscriptions. The offer was fraudulent and any money paid by the victim-consumers was simply stolen by the defendants.

## Defendants and Their Roles

5. **Company Owners:** Defendants [Redacted], [Redacted], SAMAN MOGHBEL, and [Redacted] (the "Company Owners") owned and operated Canadian-based companies that carried out this telemarketing scheme. The Company Owners provided lead lists and fraudulent sales scripts to their telemarketing employees for use in carrying out the fraud scheme. The Company Owners maintained credit card merchant accounts through which they billed the victim-consumers.

6. **Telemarketing Managers:** Defendants CODY TIMMERMAN and JUSTIN SUHAJDA (the "Telemarketing Managers") managed telemarketers involved in fraudulent magazine sales. The Telemarketing Managers trained

5

telemarketers to use fraudulent sales scripts to defraud victim-consumers and supervised the telemarketers on a day-to-day basis.

7. **Telemarketers:** Defendants IRMA TIMMERMAN, SIARRA GALLEGOS, and TODD HUGHES (the "Telemarketers") were telemarketers who made fraudulent sales calls to victim-consumers across the United States.

## Manner and Means of the Conspiracy

8. The defendants devised and participated in a fraud scheme that took advantage of victim-consumers who had been previously defrauded by multiple magazine companies. The victim-consumers had been "sold" magazine subscriptions they did not want and did not knowingly sign up for. The victim-consumers were being billed by multiple other magazine sales companies—as many as a dozen magazine companies at a time. Many of these victim-consumers were elderly and otherwise vulnerable. They were desperate to cancel their magazines.

9. The defendants called the victim-consumers and fraudulently represented that they were calling with an offer to cancel unwanted magazine subscriptions and pay off any outstanding balance in exchange for a large, one-time payment. In reality, the victim-consumers did not owe the Company Owners or their companies any money and the companies had no power or authority to stop or cancel the victim-consumers' ongoing subscriptions.

10. It was part of the scheme that the Company Owners purchased sales lead lists of consumers with existing magazine subscriptions through other companies. Many of the people on these lead lists had been previously victimized by other fraudulent magazine companies.

11. Defendants [Redacted] and [Redacted] had Telemarketers and Telemarketing Managers working from several locations in the United States, including defendants CODY and IRMA TIMMERMAN in Arizona, defendants GALLEGOS and SUHAJDA in California, and defendant HUGHES in Iowa.

12. Defendants MOGHBEL and [Redacted] outsourced their telemarketing calls to the Philippines Call Center.

13. At the direction of defendants [Redacted], [Redacted], MOGHBEL, and [Redacted], defendants CODY and IRMA TIMMERMAN, GALLEGOS, SUHAJDA, HUGHES, and others called the victim-consumers on lead lists using fraudulent sales scripts. The scripts directed the Telemarketers to falsely claim that the victim-consumers owed a large outstanding balance for existing magazine subscriptions with their company. The scripts then directed the Telemarketers to fraudulently offer to pay off that balance in exchange for a lump-sum payment.

14. Defendants CODY and IRMA TIMMERMAN, GALLEGOS, SUHAJDA, and HUGHES fraudulently offered to pay off this fictitious balance in exchange for a single payment of $599.90 or two payments of $249.95 to PCC. Telemarketers at defendants MOGHBEL and [Redacted]'s Philippines Call Center and elsewhere fraudulently offered to pay off the victim-consumer's fictitious balance in exchange for a lump-sum payment of $195.87 or $199.50 to Readers Services or NP Readers. In reality, the victim-consumers did not have any existing subscriptions with the companies, did not owe the companies any outstanding balance, and the companies did not have the ability to cancel the victim-consumers' ongoing magazine subscriptions. Defendants CODY and IRMA TIMMERMAN, GALLEGOS,

7

SUHAJDA, HUGHES, and others did not call the victim-consumers to help them pay off an existing balance at a reduced price. They called to defraud them. When victim-consumers paid the money, their subscriptions were not cancelled and any balance they owed to other magazine sales companies remained. The money collected by the defendants was simply stolen.

15. During some of these calls, the Telemarketers offered sympathy to the victim-consumers and purported to be helping them put a stop to the fraudulent magazine subscriptions that had been plaguing them for years. During other calls, they became aggressive and threatened legal action or other consequences if the victim-consumer did not agree to make the payment. In either case, the script preyed upon the desperation and fear of the elderly and other vulnerable victims who had been caught up in the cycle of fraud.

16. It was further part of the scheme that the defendants knowingly caused to be transmitted by means of a wire communication in interstate commerce, certain writings, signs, signals, and sounds, including phone calls to victims in Minnesota.

17. During the course of their scheme, the co-conspirators defrauded more than 20,000 victims across the United States. In all, they received nearly $30 million from the victims of their scheme.

All in violation of Title 18, United States Code, Sections 1349 and 2326.

### Counts 2-14
(Wire Fraud)

18. The allegations in paragraphs 1 through 17 of Count 1 are incorporated herein.

19. From at least in or about 2011 through in or about 2020, in the State and District of Minnesota, and elsewhere, the defendants,

CODY WAYNE TIMMERMAN,
also known as "Ben Davis,"
IRMA BEATRICE TIMMERMAN,
also known as "Grace,"
SIARRA IRIS DAWN GALLEGOS,
also known as "Holly" and "Sarah,"
JUSTIN DONALD SUHAJDA,
TODD ALLEN HUGHES,
also known as "Eric" and "Justin,"
[Redacted],
[Redacted],
SAMAN MOGHBEL, and
[Redacted],
[Redacted]

and others known and unknown to the grand jury, and in connection with the conduct of telemarketing that victimized ten or more persons over the age of 55, did knowingly devise and participate in a scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts.

20. On or about the dates listed below, in the State and District of Minnesota and elsewhere, the defendants, as set forth below, for the purpose of executing the scheme described above, knowingly caused to be transmitted by means of a wire communication in interstate commerce, certain writings, signs, signals, and sounds, including the following:

| Count | Defendants | Date (on or about) | Wire Details |
|---|---|---|---|
| 2 | [Redacted] | August 22, 2016 | A phone call from an employee of PCC to Victim Sharon G. in Minnesota |

9

| 3 | Redacted, CODY TIMMERMAN, IRMA TIMMERMAN | December 19, 2016 | A phone call from CODY TIMMERMAN in Arizona to Victim Sharon G. in Minnesota |
|---|---|---|---|
| 4 | SUHAJDA, HUGHES, Redacted | March 26, 2018 | A phone call from HUGHES in Iowa to Victim Caroline W. in Minnesota |
| 5 | MOGHBEL, Redacted | July 16, 2019 | An email with the subject line "Files Available!!!" from a lead broker in Georgia to several magazine telemarketing company owners, including Redacted and Tim Hanssen in Minnesota |
| 6 | CODY TIMMERMAN, IRMA TIMMERMAN, GALLEGOS, Redacted, | August 13, 2019 | A phone call from GALLEGOS in California calling on behalf of PCC to an undercover Postal Inspection Service employee in Minnesota posing as "Gloria Gore" |
| 7 | CODY TIMMERMAN, IRMA TIMMERMAN, GALLEGOS, Redacted | August 13, 2019 | A phone call from GALLEGOS in California calling on behalf of PCC to an undercover Postal Inspector in Minnesota posing as "Ruth McDermott" |
| 8 | CODY TIMMERMAN, IRMA TIMMERMAN, GALLEGOS, Redacted | August 14, 2019 | A phone call from GALLEGOS in California calling on behalf of PCC to an undercover Postal Inspector in Minnesota posing as "Rose Cubur" |
| 9 | MOGHBEL, Redacted | August 26, 2019 | A phone call from Individual MG in Canada calling on behalf of Readers Services to an undercover Postal Inspection Service employee in Minnesota posing as "Gloria Gore" |
| 10 | CODY TIMMERMAN, IRMA TIMMERMAN, GALLEGOS, Redacted | November 7, 2019 | A phone call from CODY TIMMERMAN in Arizona calling on behalf of PCC to an undercover Postal Inspector Service employee in Minnesota posing as "Gloria Gore" |
| 11 | CODY TIMMERMAN, IRMA TIMMERMAN, GALLEGOS, Redacted, | December 19, 2019 | A phone call from GALLEGOS in California calling on behalf of PCC to an undercover FBI agent in |

|    |                              |                      |                                                                                                                                              |
|----|------------------------------|----------------------|----------------------------------------------------------------------------------------------------------------------------------------------|
|    | Redacted                     |                      | Minnesota posing as "Richard Magneson"                                                                                                       |
| 12 | SUHAJDA, HUGHES, Redacted    | December 12, 2019    | A phone call from HUGHES in Iowa to Victim FL in Minnesota                                                                                   |
| 13 | MOGHBEL, Redacted            | January 10, 2020     | A phone call from "Hazel" calling from Canada on behalf of NP Readers Service to an undercover FBI agent in Minnesota posing as "Henry Goodwin" |
| 14 | MOGHBEL, Redacted            | May 14, 2020         | A phone call from "Kate" calling on behalf of NP Readers to an undercover Postal Inspector in Minnesota posing as "Scott McCready"          |

All in violation of Title 18, United States Code, Sections 1343 and 2326.

## FORFEITURE ALLEGATIONS

21. Counts 1 through 14 of this Indictment are incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) in conjunction with Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 982(a)(8).

22. If convicted of any of Counts 1 through 14 of this Indictment, the defendants shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to Counts 1 through 14 of the Indictment.

23. If convicted of any of Counts 1 through 14 of this Indictment, the defendants shall also forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(8), any real or personal property used or intended to be used to

11

commit, facilitate, or promote the commission of the wire fraud scheme alleged in Counts 1 through 14 of the Indictment.

24. The property subject to forfeiture includes, but is not limited to:

   a. $1,503.95 seized from in Bank of America, account No. 3250 4444 6790, in the name of Cody W. Timmerman and Irma B. Timmerman;

   b. $1,794.82 seized from Bank of America, account No. 1641 0769 6127, in the name of The Magazine Deal Inc.;

   c. $12,793.29 seized from Bank of America, account No. 3250 4834 1286, in the name of Middle Man Marketing LLC;

   d. $172,075.58 seized from Merrick Bank, merchant account No. 8788270143888, in the name of Preferred Customer Corp.

   e. $192,328.68 seized from Bank of America account No. 4880 4017 2756, in the name of Preferred Customer Corporation;

   f. The real property located at 40887 W. Chambers Dr., Maricopa Arizona; and

   g. The real property located at 90 County Road 38, Norfolk, New York.

25. If any of the above-described property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 982(b).

A TRUE BILL

_____          _____
UNITED STATES ATTORNEY                FOREPERSON